Case of the day, Levy v. Marion County Sheriff. Mr. Biedmenderfer. May it please the court. Good morning, Your Honors. Tom Biedmenderfer for the appellant, Gai Levy. And today we are asking this court to reverse the district court's grant of summary judgment in favor of the Marion County Sheriff, who held Mr. Levy in custody for two and a half days after the point in which his bond was paid, as a result of the fact that his computer system couldn't communicate court orders to release him. Mr. Levy, after the point of his arrest, was booked and had his bond posted within about three hours. But nevertheless, he was held in jail by the Sheriff of Marion County until the time of his initial hearing and actually for an additional 24 hours after that. And what matters most in this case and what the district court overlooked is the causal link between that unconstitutional over-detention and the Sheriff's custom practice or policy of processing releases through its chosen computer system, the offender management system. In its briefs, the Sheriff concedes that use of this computer system, in conjunction with the rest of its release process, does in fact constitute its official policy. So, in other words, this is municipal action attributable to the Sheriff under Monell and his progeny, sufficient for liability under a Section 1983 claim. So since the Sheriff admits that this release process and its computer system is its Monell policy, I submit that this appeal rises or falls on the second two elements of Monell liability, one of which I've already mentioned is the causal link between Mr. Levy's detention and the Sheriff's use of this computer system. And secondly, deliberate indifference, that is, whether the Sheriff acted deliberately indifferent to predictable effects of use of this computer system. I think you've omitted some facts in that characterization of the issue. The bug in the computer systems, as I understand it, is that the court's computer system doesn't interface with the Sheriff's computer system in a way that would permit a new court order with a new code for the defendant's release status to override the old code coming from the court directing the Sheriff to use a certain release process for the defendants. And that the courts in Marion County and the Sheriff's office have implemented a policy to take care of that problem, and that policy is that when there's a new court order that purports to override the old court order that has been coded into the system, the court staff calls the Sheriff's staff and tells it to override verbally. And that didn't happen here. There was no phone call from the court staff to the Sheriff's office pursuant to the Sheriff's policy. So it was simply a misfire, an individual misfire of the policy, which is not enough to sustain a Monell policy or practice claim. It doesn't establish deliberate indifference, and it doesn't establish causation. The causation here is attributable to the court staff dropping the ball, and to the extent that the policy is implicated, the policy is fine. It just didn't work in this single case. You don't have any evidence of repeated failures or repeated misfires of this sort, so you don't have a deliberate indifference claim of the Monell variety. That's essentially a fair characterization, Your Honor, of the district court's decision. But what that overlooks is the context and timeline in which this release workflow was developed. The release workflow arose in the face of widespread complaints of over-detention, and the fact that defendants were languishing in jail for days, weeks past the point in time they were being ordered released because the computer system couldn't communicate those orders. Understood. And the two agencies, the courts and the Sheriff, have implemented a fix, and that's the phone call policy. When a judge issues a new order, changing an inmate's release status, that's communicated over the phone. It's inputted into the system, but because of this bug in the interface between the systems, it's got to be communicated by phone. And you have no evidence that that policy, that feature of the policy, has repeatedly failed, and that's what you need in order to sustain a Monell claim. Respectfully, I disagree with the characterization of this release workflow as a fix, because it clearly didn't work in Mr. Levy's case. A single failure is not enough to carry a Monell claim. It is, under the PINBAR decision, the United States Supreme Court decided that a single act of policy deliberately chosen amongst alternatives by a policymaker with that policymaking authority. The court clerk is not a policymaker. Right. The deputy clerk in the court who failed to call the Sheriff is not a policymaker. You're not attacking policy. What you've got is a single instance of the system not working. That doesn't fall within the PINBAR case. You're right, Your Honor, that the court staff is not a policymaker, and it's not the court staff's constitutional responsibility to release detainees. It's the Sheriff's. There was a suggestion in the briefs at some point by the Sheriff that, well, Mr. Levy's remedy here was to sue court staff because this is an error of court staff. Respectfully, I think a suit against the court staff would have probably been thrown out on 12b motion because the court staff has no duty to release inmates. Under the Constitution as a common law, as well as under state statute, it's the responsibility of the Sheriff to process court orders and release defendants. The Sheriff has the key, not the court staff. And ignoring—blaming the court staff in this instance, it ignores that the release workflow was developed as a manual check and as a system of manually updating this offender management system in the face of numerous complaints because it was unable to itself automatically communicate court release orders. Derek Peterson, the Sheriff's affidavit in this case, who is their chief information officer, testified that the idea for the release workflow first came about in January 2015, which is six or seven months after the offender management system went live, if you will. And he testified that prior to that point in time, the Sheriff was not knowing when orders were coming down the pike through the Odyssey system because the offender management system couldn't process and communicate those orders. This circuit in the Driver case in 2017 recognized that, faced with this evidence of incompatibilities with the offender management system, courts in Marion County were having to resort to what it called alternative channels of communication. I listed some of those as examples, telephone calls, e-mails, faxes, that sort of thing. And what the district court in this case overlooked is that the release workflow is that alternative channel of communication. It's a way for the courts to communicate outside of the computer systems because the Sheriff's chosen computer system can't receive court orders. And shifting to the deliberate indifference element here, the Sheriff adopted this computer system without properly vetting it. In fact, it received the computer system for free. And not only was it free, it was actually profitable because in exchange for adopting this computer system, it extended a contract that paid it millions of dollars in telephone, collect call, inmate revenue. In the city of Indianapolis and consolidated Marion County of Marion, we have an agency, the Information Services Agency, who exists to advise entities like the Sheriff on these sorts of technology platforms and technology changes. There's actually a code, a municipal code in Indianapolis, that requires the Sheriff and other agencies to consult ISA on these matters of software. And the Sheriff didn't do that. Barbara Thompson, who was the contract manager for ISA at the time, testified in affidavit that the Sheriff, number one, did not come to them and that if the Sheriff had come to them, ISA would have informed the Sheriff that there will be incompatibility issues and would have advised them to adopt a different system, or at least that the offender management system wouldn't work. And there's abundant evidence in the record of the Sheriff sticking with this computer system with years of knowledge of complaints by inmates, lawyers, judges, even members of its own entity, pointing out that there are just abundant inconsistencies. But none of those complaints are about what's at issue here, are they? Specifically, none of those complaints are about the call not happening from the court on a subsequent release order. That's right. So doesn't that impact your deliberate indifference argument? If they were about the system on the front end, I think you'd have a much stronger argument. But how were they on notice of a problem that would go to the deliberate indifference element if there were no problems with this particular aspect? And that's earlier, Your Honor, why I stated that the crucial part of this appeal is the causal link element because the Sheriff's release workflow exists due to inadequacies with its computer system. This is not a perfect world, but in a rational world, the release workflow doesn't even need to exist. Why? Because in a rational world, the court's computer system, judges put in an order, it's transmitted to the Sheriff's computer system, the Sheriff sees and acts upon that order. But that didn't happen in this case, and as a result of the fact that didn't happen, and to try and remedy problems like this, the Sheriff put in its release workflow. Isn't that what they're supposed to do if there's a problem and it comes to their attention, attempt to fix it or put in a backup plan, as the court talked about in Armstrong? Yes, it's constitutionally obligated to make improvements, but in this case what it's doing is making an excuse and trying to push it off to court staff. There were essentially any number of ways the Sheriff could have remedied this problem with its computer system, the least of which is to consider the court's recommendation to switch computer systems, but instead what it tried to do is put in this release workflow as some sort of patch that ultimately failed in Mr. Levy's case and led to his constitutional over-detention. Do you want to reserve some time for rebuttal? I do. Thank you, Your Honor. All right. Thank you. Mr. Overholt. Good morning. I'm Tony Overholt here on behalf of the Marion County Sheriff. The district court properly analyzed this case by looking at the specific facts of what happened with Mr. Levy. It looked to the fact that showed exactly how the OMS system transmitted information, how it worked in this case, and it showed that the system worked. As Judge Sykes indicated, the problem was there was an isolated failure by a member of the court staff. Someone failed to do what they were supposed to do. That's not deliberate indifference. The driver case, which is talked about extensively in the plaintiff's brief and which I did not spend much time on in my brief, is quite frankly irrelevant. That is a class action pending in the district court. There has been no class certified. There has been no determination that any of the claims asserted by plaintiff here are true. In fact, if one looks at the materials in the driver case, I could actually refute virtually everything he said based on evidence that's been produced in driver. But again, that's not what we're here today to talk about. We're here to talk about Mr. Levy and what happened with Mr. Levy. So the status of the driver litigation is that the district court has not yet ruled on class certification questions following the remand from this court? Correct. After the remand from this court, there was extensive discovery that was conducted, and we have wrapped that up. A class certification briefing finished a couple of weeks ago, and the hearing on class certification will be October 9th. Okay. I think my brief lays out my position both on deliberate indifference and what actually happened here. Unless the court has specific questions, I don't really have anything else to add. I'll stand on my brief. All right. Thank you. Thank you. Thank you. Thank you. Thank you.  This circuit and driver in reversing denial of class certification for those plaintiffs challenging the sheriff's use of this computer system recognize that, number one, use of this computer system represents what this circuit understands to be a custom policy or practice under Monell. And secondly, it recognized that as a result of this inadequate computer system, that courts are having to resort to these alternative channels of communication. Driver is extremely relevant in this case. And further, the sheriff's suggestion that this is an isolated incident. We, I concede, do not have evidence of the lack of a phone call previously resulting in over-detentions. But what we are challenging is not the lack of a phone call. What we are challenging is the fact that a phone call is necessary because it stems directly from the fact that a chosen computer system can't adequately and on its own communicate court orders. And the defendant, sheriff here, has no evidence that this is an isolated incident. It's not up to the sheriff to prove that. It's your burden. Right, Your Honor. But the deliberate indifference, there's evidence in the record that it continues today to operate this offender management system as the main principal component of its release process with years of knowledge that sometimes doesn't communicate court release orders. And with that, unless there are any further questions, we ask this Court to reverse and remand. Thank you. All right, thank you. Thank you to all counsel. Case is taken under advisement.